## NEWTON v. McGUIRE.

(Circuit Court, S. D. New York. November 14, 1899.)

1. PATENTS—LIMITATION BY FOREIGN PATENTS—ACT EXTENDING TERM.
Act March 3, 1897 (29 Stat. c. 391), amending the statutes relating to patents, by its terms does not affect patents granted prior to January 1. 1898.

2. SAME—SUIT FOR INFRINGEMENT—RIGHT OF LICENSEE TO MAINTAIN.
A decree reforming a license so as to confer on the licensee the exclusive right to make and vend a patented machine does not entitle the licensee to maintain a suit for infringement against one not a party, who had previously purchased a machine from the patentee, who then held the title to the patent.

3. SAME—BRICK-MOLD SANDING MACHINE.
The Newton patent, No. 407,030, for a brick-mold sanding machine, claim 5, is void for lack of patentable invention in the device shown in the specification.

4. SAME—FEEDING MECHANISM.
The Newton patent, No. 372,698, for improvements in feeding and delivering mechanism for brick-mold sanding machines, consisting chiefly of an additional feed pulley, which positively separates the lower mold of a series from the table and from the next one above it, and moves it towards the cylinder of the machine, discloses an invention of merit, and is valid. It is infringed by a machine which embodies such feature, and only differs in having the table provided with anti-friction rollers, on which the lower mold rests, and which facilitate its movement.

This was a suit in equity by Addie Newton against Terrence Mc-Guire for infringement of certain patents. On final hearing.

Walter E. Ward, for complainant.
George A. Mosher, for defendant.

COXE, District Judge. This is an infringement suit founded upon four patents for brick-mold sanding machines. No. 284,115 was granted to James A. Buck, August 28, 1883. This patent was limited to the term of a Canadian patent for the same invention which expired March 31, 1898, prior to the commencement of this action. The contention that the act of March 3, 1897 (29 Stat. 694), operated to extend the term of the patent for two years cannot be maintained. The explicit statement that the act "shall not apply to any patent granted prior to said date" (January 1, 1898), would seem to be a sufficient answer.

No. 301,087 was granted to James A. Buck, July 1, 1884. The defense is that the complainant has no title to the patent which enables her to proceed against the machines operated by the defendant, which were purchased of the patentee James A. Buck at a time when he was the owner of the patent. In the action brought by the complainant against Buck the circuit court of appeals for this circuit decided (23 C. C. A. 355, 77 Fed. 614) that the complainant had no title to the patent and that the legal and equitable title were in Buck. This decision must, of course, be respected by this court. The contention that it should be disregarded because no judgment was entered thereon is untenable. Although the precise date when the defendant purchased the alleged infringing machines is not in evidence it seems to be conceded on all sides that they were purchased of Buck at a time when, by the law of the said decision, he was the owner of the patent. On the 10th of March, 1897, Buck assigned the patent to the Buck Machine Company, and the company on the 15th of November, 1897, granted to the complainant an exclusive license to manufacture and sell under the patent. On the 16th of March, 1897, the complainant commenced an action against Buck and Albert H. Newton, the company not being a party, and on the 4th of February, 1898, obtained a decree which, among other things, reformed the assignments from which the patent number had been inadvertently omitted. It is unnecessary to determine what rights this license and decree conferred upon the complainant further than to say that under the law, as above stated, she acquired, in the opinion of the court, no title to maintain this action against one whose rights cannot be affected by proceedings to which he was not a party and which were begun after those rights became vested.

No. 407,030 was granted to A. H. Newton July 16, 1889. Claim 5 is the only one involved. It is as follows:

"In a brick-mold sanding machine, a feed table, a sanding cylinder, belt rollers, and feed rollers, in combination with belts passing around said cylinder, belt rollers, and feed rollers, substantially as described."

Assuming that this claim, which is an exceedingly broad one, can be limited to the precise mechanism shown, it is still void for lack of patentability. No patentable improvement is shown over the

structures of the prior art. The court understands that, after the discussion at the argument, this proposition was not seriously disputed by the complainant's counsel.

No. 372,698 remains to be considered. The patent was granted to the Newton brothers November 8, 1887, for improvements in feeding and delivering mechanism for mold-sanding machines. This patent is free from the almost inextricable tangle in which the title to the Buck patent is involved. The specification states that it has been found by experience that where a "water strike" is employed the molds are liable to adhere to each other when placed upon the feed table. One of the objects of the invention is to provide a positive mold-feeding device which shall operate to separate the lower mold of a series from the one next above it in order to insure its being conducted to the sanding cylinder. This is accomplished by providing an additional feed pulley which projects slightly through the bed of the feed rack so as to come in contact with only the lower mold which is thus rolled down upon the belt which holds it in the desired position on the drum. The introduction of this positive feed pulley seems to be new with the patentees and is a valuable addition to the art. It prevents the machine from clogging and feeds the molds to the sanding cylinder continuously without break or hitch. The claims involved are as follows:

"(1) In combination with the feed table of a brick-mold sanding machine, a rotary mold separator arranged to come into contact with the lowest mold on the table, and to positively separate it from the table and from the next mold above, and to positively move the mold towards the cylinder of the machine, substantially as specified. (2) The combination, with the cylinder of a brick-mold sanding machine and with the endless belts employed therewith, of a rotary mold separator having a motion, when separating molds, substantially agreeing in time with and in the same direction as the said endless belts, substantially as specified."

The defense relied on is noninfringement.

The defendant's rack is provided with two idle rollers which extend beyond the plane of the feed track of the rack and, by preventing friction, assist gravity in feeding the molds to the cylinder. In addition to these rollers his rack is provided with an unquestioned equivalent for the positive mold separator of the patent, which comes in contact with the lowest mold and separates it from the table and from the next mold above. The defendant contends that he escapes infringement by the use of these idle rollers, because they separate the molds from the rack and, therefore, the molds cannot be separated from the rack by the positively moving rollers of the claim. The use of the idle rollers may or may not be an improvement. Very likely they facilitate the downward movement of the molds, but their presence does not enable the defendant to use the patented device. The rack is none the less a rack because it is provided with anti-friction rollers. The entire slideway from top to bottom might be composed of a series of such rollers so that the molds at no time contact with anything else, but it would still continue to be a feed rack. No one has the right to appropriate the invention because the feed table used by him differs in some minor particulars, in no way affecting the invention, from the feed table

shown in the patent. Were this otherwise any one who uses a device, a downwardly extending flat spring for instance, which lifts the mold a fraction of an inch from the slideway at the moment of contact with the moving pulley, will be able to escape infringement. These idle rollers enable the molds to descend with greater ease. To use a homely simile, they grease the tracks of the feed table; but it will hardly be contended that one who keeps these slideways thickly coated with a lubricant, so that the molds slip down easily, can use the patented mechanism. If, as contended, the idle rollers make the positive rollers unnecessary, the defendant's remedy is simple; he has only to remove the latter from his machine. Of course there is no virtue in the contention that infringement is avoided because the drawing shows the positive feed pulleys mounted on a separate shaft while in the defendant's device they are mounted on the same shaft which is revolved by the endless belts or chains. A better example of an equivalent is seldom seen. The location of the idle pulleys on the defendant's rack is apt to deceive the casual observer. He is misled into thinking that they bear some relation to the positive pulleys of the drawing. When, however, it is remembered that the idle pulleys have nothing whatever to do with the invention and that the only change the defendant has made is to mount the sprocket wheels on the same shaft with the positive pulleys, the situation is made clear. There can be little doubt that the defendant uses the combination of the claims; that he uses something else in addition is immaterial. It follows that the complainant is entitled to a decree limited to claims 1 and 2 of letters patent No. 372,698.